IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAY D. CARTER,

       Petitioner,              No. 2:11-cv-1038 KJN P

       vs.

MICHAEL BABCOCK, Warden,[1]      ORDER AND

       Respondent.         FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Petitioner, a federal prisoner proceeding without counsel, has filed a habeas

corpus petition pursuant to 28 U.S.C. § 2241.  Petitioner is incarcerated at the Federal

Correctional Institution in Herlong, California.  Petitioner claims that his due process rights were

violated in connection with a prison disciplinary hearing, and that there was insufficient evidence

to support the guilty finding.  Petitioner seeks an order expunging the disciplinary hearing report.

        Pending before the court is respondent's motion to dismiss filed July 18, 2011.

Respondent argues that this action should be dismissed because petitioner received all the

process to which he was entitled, and the decision was supported by some evidence.  After

_____

[1] Michael Babcock, current warden of the federal prison in Herlong, is substituted in
place of Richard B. Ives.

1

1   carefully reviewing the record, the undersigned recommends that the motion to dismiss be

2   construed as an answer, and the petition for writ of habeas corpus be denied.

3   II.   Exhaustion of Remedies

4          Petitioner has exhausted his administrative remedies.  (Dkt. No. 1 at 41.)

5   III.   Motion to Dismiss

6          Respondent filed a motion to dismiss the petition.  Along with the motion,

7   respondent submitted several exhibits, many of which are duplicates of those petitioner appended

8   to the original petition.  In the motion, respondent argues the merits of petitioner's claims rather

9   than any procedural deficiency (such as lack of exhaustion or federal jurisdiction).

10          In dictum, the Supreme Court characterized as inappropriate a motion brought

11   pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure in a habeas corpus proceeding.

12   Browder v. Director, Ill. Dept. of Corrections, 434 U.S. 257, 269 n.14 (1978).  However, motions

13   to dismiss under Rule 4 of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. foll.

14   § 2254, are expressly authorized.  White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989).  Rule 4

15   allows a district court to dismiss a petition if it "plainly appears from the face of the petition and

16   any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ."

17   Rule 4, Fed. R. Governing § 2254 Cases.[2]  The Ninth Circuit has allowed a respondent to file a

18   motion to dismiss in lieu of an answer if the motion attacks the pleadings for a failure to exhaust

19   state remedies or alleged violations of the state's procedural rules.  See, e.g., O'Bremski v. Maass,

20   915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure

21   to exhaust state remedies); White, 874 F.2d at 602-03 (using Rule 4 as procedural grounds to

22   review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp. 1189, 1194

23   & n.12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the court

24   orders a response.  See Hillery, 533 F. Supp. at 1194 & n.12.

25   _____

26          [2]  The Rules Governing Section 2254 Cases may be applied to petitions brought pursuant
     to § 2241.  Rule 1(b), Fed. R. Governing § 2254 Cases.

2

1    Rule 7 permits the court to direct the parties to expand the record by submitting

2  additional materials relating to the petition and to authenticate such materials, which may include

3  documents, exhibits, affidavits, and answers under oath to written interrogatories propounded by

4  the judge.  Rule 7(a), (b), Fed. R. Governing § 2254 Cases.  One purpose of expanding the record

5  is to enable the court to dispose of some habeas petitions that are not dismissed on the pleadings,

6  but to do so without the time and expense required for an evidentiary hearing.  Rule 7 Advisory

7  Committee's Note, Fed. R. Governing § 2254 Cases.  Here, respondent appended exhibits to the

8  motion to dismiss which were not included with the petition.  Accordingly, the court expands the

9  record to include respondent's exhibits.

10    Review of the motion to dismiss and the opposition demonstrates that there are no

11  disputed issues of fact; rather, both parties' arguments are based on application of the law.

12  Therefore, the expansion of the record permits summary disposition of the petition without a full

13  evidentiary hearing.  See Garcia v. Chavez, 2010 WL 3715514, *2 (E.D. Cal., Sept. 16, 2010)[3]

14  (citation omitted) (28 U.S.C. § 2254 petition expanded to include document appended to motion

15  to dismiss).  In view of the absence of a material issue of fact concerning the authenticity or

16  contents of the instant record, the court will consider the merits of the petition.  Accordingly, the

17  court construes the motion to dismiss to be an answer that responds to the petition.  Conde-

18  Rodriguez v. Adler, 2010 WL 2353522, *4 (E.D. Cal., June 9, 2010) (motion to dismiss

19  construed as an answer).[4]  Thus, in resolving the instant action, the court considers the petition,

20  the motion to dismiss, and petitioner's opposition.

21

22    [3] The court in Garcia considered a state prisoner's challenge to a disciplinary conviction
     under 28 U.S.C. § 2254.  Id.  The court concluded that the expanded record demonstrated that the
23  petitioner received all process of law he was due, and that the guilty finding of mutual combat
     was supported by some evidence.  Id.
24
     [4] In a § 2241 challenge similar to the instant one, the court in Conde-Rodriguez found
25  that the prison disciplinary citing possession of a hazardous tool under § 108 was supported by
     some evidence based on the petitioner's admission that he paid to use the cell phone, which
26  strengthened the inference that petitioner had control over the instrument.  Id.

1  IV.  Factual Summary

2          On December 18, 2009, petitioner was issued an incident report for "Possession of

3  a Hazardous Tool (Homemade Charger)," in violation of 28 C.F.R. § 541.13.[5]  (Dkt. No. 1 at 23.)

4  Correctional Officer K. Wilson described the incident as follows.  (Id.)  "[A] homemade cell

5  phone charger was found inside the personal locker assigned to [petitioner] . . . inside

6  [petitioner's] laundry bag concealed in a sock."  (Id.)  Petitioner was provided written notice of

7  the incident report on December 19, 2009.  (Id.)

8          On March 3, 2010, petitioner was advised of his rights in connection with the

9  disciplinary hearing for the incident report.  (Dkt. No. 1 at 25.)  On that same day, petitioner was

10  given notice that the disciplinary hearing was delayed due to the referral of the incident report to

11  the United States Attorney for review for possible prosecution.  (Dkt. No. 10-1 at 6.)

12          The disciplinary hearing occurred on April 15, 2010; petitioner was present, and

13  had the assistance of staff representative J. Hawkins.  (Dkt. No. 1 at 27.)  During the hearing,

14  petitioner confirmed that he was given 24 hours notice to prepare.  (Id. at 29.)  Petitioner was

15  provided the opportunity to present witnesses or documentary evidence, but did not request

16  witnesses or provide documentary evidence.  (Id. at 27-28.)  During the hearing, petitioner denied

17  using the homemade charger for a cell phone, but admitted using it for his book light.  (Id. at 29.)

18          The discipline hearing officer ("DHO") considered Officer Wilson's description

19  of the incident, petitioner's statements, a photo of the homemade charger (dkt. no. 10 at 17), and

20  a December 18, 2009 memorandum from Operations Lieutenant C. Chatters regarding the

21  discovery of the contraband (dkt. no. 10 at 16).  The DHO found petitioner guilty and imposed

22  the following sanctions:  30 days disciplinary segregation; forfeiture of 27 days of good conduct

23  time; 180 days loss of commissary and phone privileges, and a recommended disciplinary

24  transfer at the discretion of the unit team.  (Dkt. No. 1 at 29.)

25  _____

26      [5]  These prohibited acts under 28 C.F.R. § 541.13 are now located at 28 C.F.R. § 541.3.

1          On June 8, 2010, petitioner was provided a written copy of the "Discipline

2   Hearing Officer Report," issued May 20, 2010, which included a statement of the evidence the

3   DHO relied on, as well as the reasons for the decision.  (Dkt. No. 1 at 27-30.)

4          Petitioner filed the instant petition on April 18, 2011.  Petitioner alleges that:

5   (1) the disciplinary hearing was not held within 72 hours of the incident as required; (2)

6   petitioner was denied the right to demonstrate that the handmade charger could charge a book

7   light; (3) the Regional Director was biased in responding to petitioner's administrative grievance

8   after the disciplinary hearing; and (4) the evidence was insufficient to support the guilty finding.

9   (Dkt. No. 1 at 12-19.)  Petitioner seeks expungement of the incident report.  (Dkt. No. 1 at 19.)

10  V.  Legal Standards

11         A federal prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241.

12  Section 2241 permits a federal prisoner to "challenge the manner, location, or conditions of a

13  sentence's execution" by habeas review.  Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir.

14  2000).  "Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claims

15  that he has been denied good time credits without due process of law."  Bostic v. Carlson, 884

16  F.2d 1267, 1269 (9th Cir. 1989) (citations omitted).

17         Federal prisoners have a statutory right to earn good-time credits that reduce the

18  term of imprisonment.  18 U.S.C. § 3624(b).  Such credits may be revoked for committing

19  certain prohibited acts while imprisoned.  28 C.F.R. § 541.3.  Federal prisoners have certain due

20  process rights in the disciplinary proceedings that may take away those credits.  See Wolff v.

21  McDonnell, 418 U.S. 539, 556-57 (1974).  However, in prison disciplinary proceedings, an

22  inmate is not entitled to the full panoply of due process rights that apply to traditional criminal

23  cases.  Wolff, 418 U.S. at 556.  Rather, a prisoner's due process rights are limited by the

24  "legitimate institutional needs" of the institution.  Bostic, 884 F.2d at 1269.  In the prison

25  disciplinary context, due process requires that the prisoner receive:  (1) written notice of the

26  charges; (2) at least 24 hours between the time the prisoner receives written notice and the time

1    of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact

2    finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the

3    prisoner to call witnesses and present documentary evidence in his defense, when permitting him

4    to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal

5    assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

6    complex.  Wolff, 418 U.S. at 563-71.

7            As to the merits of a disciplinary finding, due process requires that the decision be

8    supported by "some evidence."  Superintendent v. Hill, 472 U.S. 445, 455 (1984).  The "some

9    evidence" standard is "minimally stringent"; a decision must be upheld if there is any reliable

10   evidence in the record that could support the conclusion reached by the fact finder.  Id. at 455-56.

11   Determining whether a decision meets this standard on habeas review does not require a federal

12   court to reexamine the entire record, independently assess the credibility of witnesses, or re-

13   weigh the evidence.  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).[6]  However,

14   the court must ascertain that the evidence has some indicia of reliability and, even if meager, "not

15   so devoid of evidence that the findings of the disciplinary board were without support or

16   otherwise arbitrary."  Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (quoting Hill, 472

17   U.S. at 457 (1985)).

18   VI.  Analysis

19            A.  Disciplinary Hearing Procedures

20            Petitioner contends that his due process rights were violated because the

21   disciplinary hearing was not held within 72 hours of the incident as required by federal

22   regulations.

23            However, even in cases such as this one, where the disciplinary hearing was not

24   timely held, a violation of a federal regulation does not rise to a due process violation.  Indeed,

25

26        [6] Toussaint was abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

1   due process does not impose a requirement that an initial hearing be held within three days of the

2   staff becoming aware of an incident.  As noted above, the Supreme Court has specifically set

3   forth the five minimal requirements that the Constitution requires to comply with federal due

4   process standards.  Wolff, 418 U.S. at 563-71.  The record confirms that the Wolff requirements

5   were met in this case.  Thus, petitioner's dissatisfaction with the delay that occurred between the

6   initial incident report and the disciplinary hearing do not implicate due process concerns.

7   Moreover, the relevant inquiry is not "whether the prison complied with its own regulations," but

8   whether plaintiff was "provided with process sufficient to meet the Wolff standard."  Walker v.

9   Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).[7]  Here, petitioner was provided all the process he

10  was due.

11                  B.  Some Evidence

12          Petitioner also argues that the evidence was insufficient to support the guilty

13  finding.  Petitioner attempts to argue this claim using criminal law concepts such as "actus reus,"

14  "mens rea," and "specific intent."  (Dkt. No. 12 at 6-7.)  However, as noted in Wolff, this court's

15  inquiry is not so discerning.  Prison disciplinary proceedings are not part of a criminal

16  prosecution; thus, a prisoner is not afforded all of the rights that a criminal defendant has in

17  criminal proceedings.  Id. 418 U.S. at 556.

18          At all times pertinent to the petition, 28 C.F.R. § 541.3 provided that prohibited

19  acts of the greatest severity include a violation of Prohibited Act Code § 108, which is described

20  as follows:

21          Possession, manufacture, or introduction of a hazardous tool
            (Tools most likely to be used in an escape or escape attempt or to
22          serve as weapons capable of doing serious bodily harm to others;
            or those hazardous to institutional security or personal safety; e.g.,
23          hack-saw blade).

24

25
_____

26          [7] Walker was abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472
    (1995).

1    28 C.F.R. § 541.3, tab. 3.  Section 541.3 puts a reasonable prisoner on notice that possession of

2    unauthorized property may subject him to sanctions.  "In 2006, the Bureau [of Prisons] notified

3    all inmates that possession of an electronic communication device or related equipment . . .

4    would be charged with a Code 108 violation."  Vasquez-Marin v. Benov, 2011 WL 2493758, *2

5    (E.D. Cal. 2011).

6            Here, the record reflects that there was some evidence supporting the disciplinary

7    findings, including petitioner's admission that he used the homemade charger for his book light.

8    Moreover, the DHO stated that even if the homemade charger was used for a book light, the

9    charger still "posed a serious safety hazard to not only this facility but the[] inhabitants therein."

10   (Dkt. No. 1 at 29.)  The fact that the homemade charger could be plugged into a book light does

11   not mean that the homemade charger could not be plugged into a cell phone, by petitioner or

12   another inmate.  Also, whether or not petitioner actually used the homemade charger with a cell

13   phone is irrelevant.  Petitioner was found guilty of possession of a hazardous tool, not use of a

14   hazardous tool.  In addition, given the proliferation of cell phones in prisons, a homemade

15   charger poses a serious security risk, by its use with a cell phone to plan escape attempts or other

16   criminal activities.  The cord of the charger could also be used as a weapon.

17           It is clear from the record, based on Officer K. Wilson's account, the recovered

18   property, and petitioner's admission that he used the charger, that there was some evidence to

19   find petitioner was in possession of a hazardous tool.  See Hill, 472 U.S. at 456-57 (finding some

20   evidence to support guilty finding for two prisoners when evidence showed that a guard

21   witnessed one inmate, who had just been assaulted, and three other inmates fleeing the scene).

22   The fact that there may be evidence suggesting petitioner's innocence is irrelevant.  Due process

23   only requires that there be "some evidence" supporting the disciplinary decision.  It does not

24   require that the supporting evidence outweigh the evidence to the contrary.  Hill, 472 U.S. at 455.

25   Because the record reflects that there was some evidence to support the guilty finding herein,

26   petitioner's insufficient evidence claim is unavailing.

1    Petitioner also claims that he was denied the right to demonstrate that the

2  handmade charger could charge a book light.  Petitioner has a due process right to "present

3  documentary evidence in his defense when permitting him to do so will not be unduly hazardous

4  to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  Here, petitioner was

5  provided an opportunity to present documentary evidence.  However, petitioner's request to

6  demonstrate the handmade charger could charge a book light goes beyond a request to compile

7  and present documentary evidence.  Rather, petitioner's request is more akin to a request that he

8  be allowed to conduct his own investigation into the offense.  Investigation is not one of the

9  minimum procedural due process rights protected under Wolff.  Id.  Moreover, as argued by

10  respondent, the charger's use for a book light does not rule out the charger's use for a cell phone.

11  The alternative use evidence would not rebut or refute the evidence provided at the disciplinary

12  hearing, i.e. Officer K. Wilson's written account of the incident, the supporting documents, and

13  petitioner's admission that he used the homemade charger for his book light.  For all of these

14  reasons, petitioner's claim is without merit.

15        C.  Alleged Bias

16    Finally, petitioner contends that the Regional Director G. Maldonado, Jr., was

17  biased in responding to petitioner's administrative grievance after the disciplinary hearing in

18  violation of petitioner's due process rights.  (Dkt. No. 12 at 3-4.)  Petitioner provided a copy of

19  the July 30, 2010 response by the Regional Director, who incorrectly stated that petitioner was

20  found in possession of, or having control over, marijuana and an MP3 player,[8] in addition to the

21  homemade charger.  (Dkt. No. 1 at 41.)  In any event, the Regional Director concluded that

22  petitioner "had control over the power accessory," which was "an accessory for a hazardous

23  tool."  (Id.)

24  _____

25    [8]  The December 18, 2009 memorandum from Lt. Chatters notes that two small bundles
of marijuana, an MP3 player, a cell phone charger, and other nuisance contraband were found in
a cubicle assigned to inmates Karl Carter and Carlos Long.  (Dkt. No. 10 at 16.)  Only a
26  homemade charger was found in petitioner's personal locker.  (Id.)

1    Prisoners have no stand-alone due process rights related to the administrative

2    grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

3    Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

4    inmates to a specific grievance process).  Put another way, prison officials are not required under

5    federal law to process inmate grievances in a specific way or to respond to them in a favorable

6    manner.  See, e.g., Williams v. Cate, 2009 WL 3789597 at *6 (E.D. Cal. Nov.10, 2009)

7    ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.");

8    Lopez v. Yates, 2011 WL 1081380 (E.D. Cal. March 21, 2011) (prisoner's claim that prison

9    officials failed to respond to administrative appeal or staff complaint fails to state a cognizable

10   claim under 28 U.S.C. § 2254).

11   Petitioner relies on irrelevant authority to support his claim to due process rights

12   during the administrative grievance process.  Petitioner argues that he must demonstrate the

13   Regional Director was actually biased or that his actions give the appearance of bias, citing

14   Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 859-60 (1988) (district judge

15   violated statute requiring judge to disqualify himself by failing to disqualify himself in litigation

16   involving university),  and United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986) (district

17   court did not abuse its discretion by denying motion to recuse trial judge).  However, both of

18   these cases addressed actions by a district court judge during trial.  The legal authority cited in

19   petitioner's opposition (dkt. no. 12 at 4), is similarly unavailing as the cases cited do not address

20   the issue of due process in the context of the prison administrative grievance process.

21   Petitioner has a due process right to an unbiased DHO, and petitioner received an

22   unbiased DHO.  Petitioner presented no legal authority demonstrating that he has a due process

23   right to an unbiased decision maker during the administrative grievance process.  As set forth

24   above, petitioner has no federal constitutional right to a properly functioning appeal system.

25   Thus, an incorrect decision on an administrative appeal, or the failure to handle it in a particular

26   way, does not amount to a violation of petitioner's right to due process.

VII.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

Respondent's motion to dismiss (dkt. no. 9) is construed as an answer; and

IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, be denied.[9]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 2, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cart1038.mtd

---

[9]  A certificate of appealability is not required for an appeal from the denial of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241.  See 28 U.S.C. § 2253; Harrison v. Ollison, 519 F.3d 952 (9th Cir. 2008).